# A

CAUSE NO. **CV-63488**

| | | |
|---|---|---|
| JACK ARIAS, BEVERLY CARY, ROGER CORLISS, ARLENE FORESTER, NANCY HARMON, WILLIAM LEVINSON, SHARON MAY, ANTHONY SCHIANO III, MARY SPARACINO, and SUSAN STEEL | § § § § § § § | IN COUNTY COURT AT LAW   1 |
| Plaintiffs, | § § | |
| v. | § § | FILED 10 AUG 11 AM 11:15 |
| BP COMPANY NORTH AMERICA, INC., BP CORPORATION NORTH AMERICA, INC., BP AMERICA, INC., BP P.L.C., BP PRODUCTS NORTH AMERICA, INC., BP EXPLORATION AND PRODUCTION, INC., TRANSOCEAN, LTD., TRANSOCEAN DEEPWATER, INC., TRANSOCEAN OFFSHORE DEEPWATER, INC., HALLIBURTON ENERGY SERVICES, INC., SPERRY-SUN DRILLING SERVICES, INC. AND CAMERON INTERNATIONAL CORPORATION | § § § § § § § § § § § § | JURY TRIAL REQUESTED |
| Defendants. | § § | GALVESTON COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs Jack Arias, Beverly Cary, Roger Corliss, Arlene Forester, Nancy Harmon, William Levinson, Sharon May, Anthony Schiano III, Mary Sparacino, and Susan Steel complain of Defendants, BP Company North America, Inc., BP Corporation North America, Inc., BP America, Inc., BP p.l.c., BP Products North America, Inc., BP Exploration and Production Inc., Transocean, Ltd., Transocean Deepwater, Inc., Transocean Offshore Deepwater, Inc., Halliburton Energy Services, Inc., Sperry-Sun Drilling Services, Inc. and Cameron International Corporation, and will respectfully show that:

A CERTIFIED COPY
Attest: SEP 1 0 2010
MARY ANN DAIGLE, County Clerk
Galveston County, Texas
By_____Deputy
CODY STOTT

## I.

### Jurisdiction

1. This claim is maintained under the statutes and common law of the State of Texas and the Texas Oil Spill Prevention and Response Act of 1991, TEX. NAT. RES. CODE §§ 40.001 *et seq*. This case is not removable because diversity jurisdiction is lacking and there is no federal question to support jurisdiction in a federal court. Plaintiffs are not bringing claims under the Oil Pollution Act of 1990 or Outer Continental Shelf Lands Act thus removal upon that basis would be in bad faith.

## II.

### Venue

2. Venue is proper here pursuant to Texas Civil Practice and Remedies Code, Section 15.002 because the residents of Galveston County are affected by this tragedy and spill, witnesses reside in the County, and Defendants do substantial business in this County.

## III.

### Discovery Level

3. Discovery in this matter may be conducted under Level 2 of the Texas Rules of Civil Procedure.

## IV.

### Parties

4. Plaintiffs Jack Arias, Beverly Cary, Roger Corliss, Arlene Forester, Nancy Harmon, William Levinson, Sharon May, Anthony Schiano III, Mary Sparacino, and Susan

A CERTIFIED COPY
Attest: SEP 1 0 2010
MARY ANN DAIGLE, County Clerk
Galveston County, Texas
By_____ Deputy
CODY STOTT

Steel are property owners who have suffered damages as a result of Defendants' acts and/or omissions.

5. Defendant **BP COMPANY NORTH AMERICA, INC.** is a Delaware Corporation with its principal place of business in Warrenville, Illinois, but doing business in the State of Texas and throughout the United States. BP Company North America, Inc. is a subsidiary of BP Corporation North America, Inc. Defendant BP Company North America, Inc. may be served with process through BP North America Inc. c/o C T Corporation System, 350 N. St. Paul St., Ste. 2900, Dallas, TX 75201-4234.

6. Defendant **BP CORPORATION NORTH AMERICA, INC.** (formerly BP Amoco Corporation), is an Indiana corporation with a principal place of business in Houston, Texas. BP Corporation North America, Inc. is wholly owned by BP America, Inc. Defendant BP Corporation North America, Inc. may be served with process through its registered agent for service, Prentice Hall Corp. System, 211 E. 7th Street, Ste. 620, Austin, Texas 78701-3218.

7. Defendant **BP AMERICA, INC.** is a Delaware corporation, authorized to do and doing business in the State of Texas, within this jurisdiction, and throughout the United States, and has a principal place of business in Warrenville, Illinois. BP America, Inc. is wholly owned by BP Holdings North America Limited, which is wholly owned by BP p.l.c. Defendant BP America Inc., may be served with process through BP Products North America, Inc. c/o Prentice Hall Corp. System, 211 E. 7th Street, Ste. 620, Austin, Texas 78701-3218.

8. Defendant **BP P.L.C.**, one of the world's largest oil companies, is a foreign corporation organized under the laws of England and Wales and doing business in the State of Texas. BP p.l.c. may be served with process at 28100 Torch Parkway, Warrenville,

A CERTIFIED COPY
Attest: SEP 1 0 2010
MARY ANN DAIGLE, County Clerk
Galveston County, Texas
By_____ Deputy
CODY SCOTT

Illinois 60555 and through BP North America Inc. c/o C T Corporation System, 350 N. St. Paul St., Ste. 2900, Dallas, TX 75201-4234.

9. Defendant **BP PRODUCTS NORTH AMERICA, INC.** is a Maryland corporation, authorized to do and doing business in the State of Texas, with a principal place of business in Houston, Texas. BP Products North America, Inc. is a subsidiary of BP Company North America, Inc., and one hundred percent (100%) of its stock is indirectly owned by BP America, Inc. Defendant BP Products North America, Inc may be served with process through its registered agent for service, Prentice Hall Corp. System, 211 E. 7th Street, Ste. 620, Austin, Texas 78701-3218.

10. Defendant **BP EXPLORATION AND PRODUCTION, INC.**, a subsidiary of BP p.l.c., is a foreign corporation doing business in Texas and within this jurisdiction. Defendant BP Exploration and Production Inc. may be served with process through its registered agent for service, C T Corporation System, 350 N. St. Paul St., Ste. 2900, Dallas, TX 75201-4234.

11. Defendants, **BP AMERICA, INC., BP CORPORATION NORTH AMERICA, INC., BP COMPANY NORTH AMERICA, INC., BP PRODUCTS NORTH AMERICA, INC., BP EXPLORATION AND PRODUCTION, INC.** and **BP P.L.C.,** will be referred to collectively as "BP," and treated, for purposes of relief sought in this Complaint, as a single business enterprise, as they were and have been, at all times material to the allegations in this Complaint, engaged in a single business enterprise.

12. BP holds the lease granted by the U.S. Minerals Management Service ("MMS") that allows BP to drill for oil and perform oil-production-related operations at the site of the explosion and oil spill. As of April 20, 2010, BP operated the oil well that is the source of the oil spill.

A CERTIFIED COPY
Attest: SEP 1 0 2010
MARY ANN DAIGLE, County Clerk
Galveston County, Texas
By_____ Deputy
CODY STOTT

13. Defendant TRANSOCEAN LTD. is a Swiss corporation doing business in the State of Texas. Transocean, Ltd. is the world's largest offshore drilling contractor and leading provider of drilling management services worldwide. Defendant, Transocean, Ltd., may be served with process at 4 Greenway Plaza, Houston, TX 77046 and through Transocean Offshore Deepwater, Inc. c/o Capitol Corporate Services, Inc., 800 Brazos, Suite 400, Austin, Texas 78701.

14. Defendant TRANSOCEAN DEEPWATER, INC. is a Delaware corporation, doing business in and having its principal place of business in the State of Texas. Transocean Deepwater, Inc. is a subsidiary of Transocean Ltd. Defendant Transocean Deepwater, Inc. may be served with process at 4 Greenway Plaza, Houston, TX 77046 and through Transocean Offshore Deepwater, Inc. c/o Capitol Corporate Services, Inc., 800 Brazos, Suite 400, Austin, Texas 78701.

15. Defendant TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC. is a Delaware corporation with its principal place of business in Texas. Transocean Offshore Deepwater Drilling, Inc. is a subsidiary of Transocean Ltd. Transocean is the world's largest offshore drilling contractor. Defendant Transocean Offshore Deepwater, Inc. may be served with process through its registered agent for service, Capitol Corporate Services, Inc., 800 Brazos, Suite 400, Austin, Texas 78701.

16. Defendants TRANSOCEAN DEEPWATER, INC., TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC. and TRANSOCEAN LTD., will be referred to collectively as "Transocean" and treated, for purposes of relief sought in this Complaint, as a single business enterprise, as they were and have been, at all times material to the allegations in this Complaint, engaged in a single business enterprise.

A CERTIFIED COPY
SEP 1 0 2010
Attest:
MARY ANN DAIGLE, County Clerk
Galveston County, Texas
By_____ Deputy
CODY STOTT

17. Transocean owned, and BP was leasing and operating, the Deepwater Horizon as it performed production well completion operations on the outer continental shelf off the Gulf Coast, at the site from which the oil spill now originates.

18. At all times material hereto, the Deepwater Horizon was owned, manned, possessed, managed, controlled, chartered and/or operated by Transocean and/or BP.

19. Defendant HALLIBURTON ENERGY SERVICES, INC. ("HESI") is a Delaware corporation, authorized to do and doing business in the State of Texas, with headquarters in Houston, Texas and Dubai, United Arab Emirates. Founded in 1919, today Halliburton is one of the world's largest providers of products and services to the energy industry. Aboard the Deepwater Horizon, HESI was engaged in the cementing operations of the well and well cap. HESI is a wholly-owned subsidiary Halliburton Company which is publicly traded in the New York Stock Exchange. Defendant, HESI may be served with process through its registered agent for service, CT Corporation System, 350 N. St. Paul St., Ste 2900, Dallas, Texas 75201-4234.

20. Defendant SPERRY-SUN DRILLING SERVICES, INC., was dissolved in October 1997 and its assets and liabilities were transferred to HESI in January 1999. Sperry is now allegedly a product service line within the drilling and evaluation division of HESI.[1] Sperry-Sun Drilling Services, Inc. may be served with process through Halliburton Energy Services, Inc. c/o CT Corporation System, 350 N. St. Paul St., Ste 2900, Dallas, Texas 75201-4234.

21. Defendant CAMERON INTERNATIONAL CORPORATION, is a foreign corporation, authorized to do and doing business in the State of Texas under the name

---

[1] See the *Supplemental Disclosure Statement on Behalf of Halliburton Energy Services, Inc. Pursuant to Local Rule 5.6E* filed 06/16/10 (Doc. # 72), in Case 2:10-cv-01502-CJB-SS.

- 6 -

A CERTIFIED COPY
Attest: SEP 1 0 2010
MARY ANN DAIGLE, County Clerk
Galveston County, Texas
By_____ Deputy
CODY STOTT

CAMERON SYSTEMS CORPORATION f/k/a COOPER CAMERON CORPORATION ("Cameron"), with a principal place of business in Texas. Cameron is a global provider of pressure control, processing, flow control and compression systems as well as project management and aftermarket services for the oil & gas and process industries. It employs approximately 15,000 people. Cameron manufactured and/or supplied the Deepwater Horizon's blowout preventer valves that failed to activate at the time of the explosion. The blowout preventer valves were defective, because they failed to operate as intended. Defendant Cameron may be served with process through its registered agent for service, CT Corporation System, 350 N. St. Paul St., Ste 2900, Dallas, Texas 75201-4234.

V.

### Nature of Action

22. Plaintiffs bring this lawsuit against Defendants for losses and damages arising out of the catastrophic and completely avoidable oil spill caused by the April 20, 2010 explosion and fire aboard Defendants' Deepwater Horizon oil rig ("Deepwater Horizon"), the subsequent sinking of that rig and the discharge of oil into the surrounding water.

23. On April 20, 2010, the Deepwater Horizon exploded and caught fire. It burned for two days before tipping into the sea. As the Deepwater Horizon sank, it broke off the riser, leaving the pipe leaking oil out into the Gulf of Mexico. The emergency valves, installed on the wellhead for just such a disaster, failed to seal the wellhead as they should have, leaving the wellhead spewing oil into the Gulf waters.

24. The spilled oil has devastated the Gulf of Mexico's marine, coastal and estuarine environments, which are used by the Plaintiffs to generate their income. The Plaintiffs have suffered and will continue to suffer serious losses.

A CERTIFIED COPY  SEP 1 0 2010
Attest: _____
MARY ANN DAIGLE, County Clerk
Galveston County, Texas
By_____ Deputy
CODY STOTT

25. The Deepwater Horizon was an ultra-deepwater dynamic positioned semisubmersible oil rig built in 2001. It was owned by Transocean Ltd. and leased to BP through September 2013. It was one of the largest rigs of its kind. On April 20, 2010, the Deepwater Horizon was in the final phases of drilling a hole in which casing is cemented in place, reinforcing the well as part of the process of turning it from an exploratory well into a production well.

26. During the course of this cementing work, an explosion occurred and the Deepwater Horizon caught fire. Investigators believe the explosion was a blowout. The fire burned for two days, and the rig finally sank on April 22, 2010, causing the deaths and injuries to many workers on the rig.

27. The Deepwater Horizon was connected to the wellhead at the seafloor by a 5,000-foot riser. As the Deepwater Horizon sank to the seafloor, it pulled the riser down with it, bending and breaking the pipe before finally tearing away from it completely. Although the now-leaking wellhead is fitted with a blowout preventer ("BOP"), a stack of hydraulically activated valves at the top of the well designed to seal off the well in the event of a sudden pressure release exactly like the one that occurred during the Deepwater Horizon blowout, the response teams have been unable to activate the valves.

28. If the BOP on the wellhead had been functional, it could have been activated right after the explosion, cutting off the flow of oil at the wellhead, limiting the spill to a minute fraction of its current severity and thereby sparing the Plaintiffs millions of dollars in losses and damage. The blow-out itself occurred while Defendants were attempted to replace drilling mud in the pipe with seawater in preparation for ceiling the well. By replacing the

- 8 -

A CERTIFIED COPY
Attest: SEP 1 0 2010
MARY ANN DAIGLE, County Clerk
Galveston County, Texas
By_____ Deputy
CODY STOTT

drilling mud with lighter seawater, Defendants allowed the gas to escape up the pipe, leading to blow-out.

29. The oil leaking into the Gulf of Mexico has caused and will continue to cause severe damage to the delicate wetlands and intertidal zones that line the coast of Texas, Louisiana, Mississippi, Alabama, and Florida destroying the habitats where fish, shellfish, and crustaceans breed, spawn, and mature. The timing of this disaster makes it even more damaging, as the summer months are spawning season for some sea life and migration time for the young of various species of shrimp.

30. The Gulf region accounts for about one-fifth of total U.S. commercial seafood production and nearly three-quarters of the nation's shrimp output, while nearly a third of all marine recreational fishing trips take place on Gulf waters, according to the Fisheries Service of the National Oceanographic and Atmospheric Administration.

31. The risks of offshore drilling are well known to Defendants, and are especially high in the Gulf of Mexico, where floating rigs are used, unlike the permanent rigs used in other seas such as the North Sea. Permanent rigs are anchored to the ocean floor, while floating rigs are far more dangerous.

32. Moreover, Defendants knew the work the Deepwater Horizon was performing was especially risky. In 2007, the MMS raised concerns about oil rig blowouts associated with the exact type of cementing work the Deepwater Horizon was doing when it exploded. Although blowouts due to other causes were on the decline, the MMS study noted that blowouts during cementing work were continuing with regularity, most in the Gulf of Mexico.

A CERTIFIED COPY
Attest: SEP 1 0 2010
MARY ANN DAIGLE, County Clerk
Galveston County, Texas
By_____ Deputy
CODY STOTT

33. The threat of blowouts increases as drilling depth increases. The Deepwater Horizon was drilling in 5,000 feet of water, to a total depth of 18,000 feet. Defendants were aware of the high risk of blowouts from such deep drilling. In 2009, Defendant BP spent $16 million lobbying the Federal government on issues including encouraging less restricted drilling on the continental shelf, despite its knowledge of the high risks involved. Moreover, Defendants have actively opposed MMS rules requiring oil rig lessees and operators to develop and audit their own Safety and Emergency Management Plans, insisting that voluntary compliance will suffice. The Deepwater Horizon incident is a tragic example to the contrary.

34. The fire and explosion on the Deepwater Horizon, its sinking and the resulting oil spill were caused by the negligence and gross negligence of Defendants, which renders them liable jointly and severally to the Plaintiffs for their damages. Defendants knew of the dangers associated with deep water drilling and failed to take appropriate measures to prevent damage to Plaintiffs and the Gulf of Mexico's marine and coastal environments and estuarine areas. Additional safety mechanisms, technologies, and precautions were known and available to Defendants, but Defendants chose not to employ them on the Deepwater Horizon.

35. Defendants attempted to downplay and conceal the severity of the oil spill. Their initial leak estimate of 1,000 barrels per day was found by government investigators to be a fraction of the actual leak amount of 35,000 to 60,000 barrels of oil per day. Moreover, Defendants were slow and incomplete in their announcements and warnings to Gulf Coast residents and business people about the severity, forecast, and trajectory of the oil spill.

A CERTIFIED COPY
Attest: SEP 10 2010
MARY ANN DAIGLE, County Clerk
Galveston County, Texas
By _____ Deputy
CODY STC

36. The blowout, explosion, fire, and resulting oil spill were caused by the concurrent negligence, gross negligence, willful misconduct and negligence *per se* of the Defendants. Upon information and belief, the Plaintiffs allege that the damages suffered by Plaintiffs were the result of Defendants negligence, gross negligence, willful misconduct, and negligence *per se* in:

   a. Failing to properly maintain and/or operate the Deepwater Horizon;
   b. Operating the Deepwater Horizon in such a manner that an explosion and fire occurred onboard, causing it to sink, resulting in the release of large quantities of oil and contaminants;
   c. Failing to properly inspect the Deepwater Horizon to assure that all equipment and personnel were fit for their intended purpose;
   d. Acting in a careless and negligent manner;
   e. Failing to promulgate, implement, and enforce proper rules and regulations to ensure the safe operations of the Deepwater Horizon, which would have prevented the disaster;
   f. Failing to take appropriate action to avoid or mitigate the accident;
   g. Negligent implementation of policies and procedures to safely conduct offshore operations in the Gulf of Mexico;
   h. Failing to ensure that the Deepwater Horizon and its equipment were free from defects and/or in proper working order;
   i. Failure to timely warn;
   j. Failure to timely bring the oil release under control;
   k. Failure to provide appropriate disaster prevention equipment;

A CERTIFIED COPY
Attest: SEP 10 2010
MARY ANN DAIGLE, County Clerk
Galveston County, Texas
By_____ Deputy
CODY STOTT

l. Unseaworthiness;

m. Failure to supervise the crew;

n. Failure to train

o. Failure to put safety over profits

p. Failure to operate safely;

q. Operating without an adequate discharge prevention and response plan;

r. Causing, allowing, and permitting an unauthorized discharge of oil;

s. Acting in a manner that justifies imposition of punitive damages; and

t. Such other acts and omissions as will be shown at the trial of this matter.

37. Defendants owed a duty to the Plaintiffs to exercise reasonable care in the manufacture, maintenance, and operation of the Deepwater Horizon. Defendants had a heightened duty of care to Plaintiffs because of the danger associated with deep water drilling from floating platforms, and the especially high risk of blowouts during cementing work such as that the Deepwater Horizon was performing at the time of the explosion.

38. Defendants breached their legal duty to Plaintiffs, failed to exercise reasonable care, and acted with reckless, willful, and wanton disregard for the businesses and livelihoods of the Plaintiffs, in the negligent manufacture, maintenance, and/or operation of the Deepwater Horizon. Defendants knew or should have known that their wanton or reckless conduct would result in a disastrous blowout and oil spill, causing damage to the economic interests of individuals and businesses in the area affected by the oil spill.

39. Defendants were involved in abnormally dangerous activities because Defendants' operations created an abnormal risk of physical harm to the natural resources of the Gulf Coast, coastal and shore areas, and contiguous environments. The physical harm is

A CERTIFIED COPY
Attest: SEP 1 0 2010
MARY ANN DAIGLE, County Clerk
Galveston County, Texas
By _____ Deputy

characteristic of the risk posed by Defendants' operations, which has been suffered as a result of the Deepwater Horizon explosion and subsequent oil spill.

40. As a result of said occurrences, Plaintiffs have sustained and will continue to sustain the following damages:

   a. Business interruption;

   b. Loss of business opportunities;

   c. Actual damages;

   d. Loss of business income;

   e. Harm to reputation;

   f. Lost Profits;

   g. Diminution in real property value;

   h. Diminution in personal property value;

   i. Lost rental income;

   j. Consequential Damages;

   k. Other harm caused by Defendants' negligence, gross negligence, willful misconduct and negligence *per se*.

41. As result Defendants' acts and omissions which caused, allowed and permitted the unlawful discharge of oil in coastal waters, Plaintiffs have suffered damages as defined by and recoverable under the Texas Oil Spill Prevention and Response Act of 1991, TEX. NAT. RES. CODE §§ 40.001 *et seq* ("OSPRA"). Specifically, Plaintiffs have suffered direct and documentable loss of, injury to, or loss of use of real or personal property and/or natural resources. The OSPRA allows persons including but not limited to holders of oyster leases or permits; persons owning operating, or employed on commercial fishing, oystering, crabbing,

- 13 -

A CERTIFIED COPY
Attest: SEP 17 2010
MARY ANN DAIGLE, County Clerk
Galveston County, Texas
By_____ Deputy
CODY STOTT

or shrimping vessels; persons owning operating, or employed by seafood processing concerns; and others similarly economically reliant on the use or acquisition of natural resources for any direct, documented loss of income, profits, or earning capacity from the inability to use or acquire natural resources. Plaintiffs have suffered the type of damages that may be recovered under to the OSPRA, and they demand compensation from Defendants in amounts to be determined by the trier of fact.

42. In addition, Plaintiffs are entitled to punitive damages because the acts and omissions of Defendants were grossly negligent and reckless. Defendants' conduct was willful, wanton, arbitrary, and capricious. Defendants acted with flagrant and malicious disregard of Plaintiffs' businesses and livelihoods. Defendants were subjectively aware of the extreme risk posed by the conditions which caused Plaintiffs' damages, but did nothing to rectify them. Defendants' acts and omissions involved an extreme degree of risk considering the probability and magnitude of potential harm to Plaintiffs and others.

43. Plaintiffs' harm will, in all likelihood, run indefinitely. Plaintiffs have been damaged in a sum far in excess of the minimum jurisdictional limits of this Honorable Court, for which they now sue. Plaintiffs are entitled to recover such economic, compensatory and punitive damages for their past, current, and future harm.

A CERTIFIED COPY
Attest: SEP 1 0 2010
MARY ANN DAIGLE, County Clerk
Galveston County, Texas
By_____ Deputy
CODY STOTT

## VII.

### Jury Trial

44. Plaintiffs hereby request a trial by jury on all claims.

## VIII.

### Prayer

45. Plaintiffs pray that this citation issue and be served upon Defendants in a form and manner prescribed by law, requiring that the Defendants appear and answer, and that upon final hearing, Plaintiffs have judgment against Defendants, both jointly and severally, in a total sum in excess of the minimum jurisdictional limits of this Court, plus pre-judgment and post-judgment interests, all costs of Court, attorneys' fees, punitive damages, and all such other and further relief, to which they may show themselves justly entitled.

Respectfully submitted,

ARNOLD & ITKIN LLP

_(signature)_

Jason A. Itkin (Texas State Bar No. 24032461)
Kurt B. Arnold (State Bar No. 24036150)
Noah M. Wexler (Texas State Bar No. 24060816)
Robert P. Wynne (Texas State Bar No. 24060861)
1401 McKinney St., Suite 2550
Houston, Texas 77010
Telephone: (713) 222-3800
Facsimile: (713) 222-3850

ATTORNEYS FOR PLAINTIFFS

FILED 10 AUG 11 AM 11:15
Mary Ann Daigle, County Clerk, Galveston County, Texas

A CERTIFIED COPY
Attest: SEP 10 2010
MARY ANN DAIGLE, County Clerk
Galveston County, Texas
By _____ Deputy
CODY STOTT